UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JASON EVERETT DANIELS,

        Plaintiff,

                                                  Civil Case No. 13-13774

v.                                                   Honorable Linda V. Parker

PREVOST CAR U.S., INC. and
NOVA BUS INC.,

        Defendants.
_____/

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff Jason Everett Daniels ("Daniels") filed this diversity lawsuit on September 4, 2013, seeking damages for injuries he sustained when an air spring he was installing on his employer's transit bus model 82VN Bus ("the bus") exploded.[1] The bus was manufactured and sold to Daniels' employer by Defendant Nova Bus Incorporated ("Nova"), which subsequently was purchased or acquired by Defendant Prevost Car U.S. Inc. (Prevost). In his Complaint, Daniels alleges that the bus was defective and relies on breach of implied warranty (Count I) and negligence (Count II) theories of liability. Specifically, Daniels claims that the instructions provided in the maintenance manual for the bus failed to instruct

---

[1] Daniels is a Michigan citizen. (ECF No. 1 ¶ 2.) Defendants are incorporated and maintain their principal places of business in New York. (*Id*. ¶ 3.) Defendants therefore are citizens of New York. *See* 28 U.S.C. § 1332(c)(1).

mechanics on how to properly get the studs on the bottom of the air spring through the holes in the spring beam to which it is attached. (*See* ECF No. 30 at Pg ID 243) He also claims that the air spring was defective to the extent that it required air to elongate the spring so the studs would fit through the spring beam, did not have threaded studs to secure it, and was of inadequate strength and exploded when Daniels introduced air into it. (*Id.*)

Presently before the Court is Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. (ECF No. 28.) Defendants contend that Daniels cannot establish the necessary elements of his design defect claim and that his claim based on inadequate instructions fails because he and his employer are "sophisticated users." Daniels filed a response to Defendants' motion. (ECF No. 30.) Defendants filed a reply brief. (ECF No. 32.) This Court held a motion hearing on January 14, 2015. For the reasons that follow, the Court now grants Defendants' motion.

## I.     Factual Background

Daniels is a licensed mechanic who graduated from the Michigan Career Institute in 1993. (ECF No. 28, Ex. A at 14-16.) Daniels briefly worked as a mechanic in two small garages following his graduation; but within seven months of graduation, he secured a job as an auto repairmen with the City of

Detroit's Department of Public Works. (*Id*. at 16-19.) In 1996, Daniels became a general auto mechanic in the department. (*Id*. at 19.)

At that time, Daniels moved from the auto repair line to the heavy truck line. (*Id*. at 20.) In 2005, Daniels was transferred to the City of Detroit Department of Transportation ("DDOT"), where he began servicing and repairing transit buses. (*Id*. at 21.) Daniels was stationed at DDOT's main garage for two to three months, where he received on-the-job and classroom training on transit bus electrical systems, air systems, wheelchair ramps, engines, and transmissions. (*Id*. at 53-54, 55-56.) At that time, Daniels received a service manual for the transit bus in question and reviewed its instructions for air spring removal and installation. (*Id*. at 72-73.) According to Daniels, his specialty in the garage was suspensions. (*Id*. at 74.) Daniels believes that before the incident that is the subject of this lawsuit, he had replaced between twenty to twenty-five air springs on Nova transit buses. (*Id*. at 80.)

On September 8, 2010, Daniels' foreman instructed him to complete a rear air spring replacement on the bus which already had been started. (*Id*. at 82.) The bus had been sold to DDOT in 2001 by Nova, which also had manufactured it. (ECF No. 30, Ex. 2 at 10.) The air spring Daniels needed to install on the bus was distributed by Prevost, although it was manufactured by

3

Goodyear. (*Id*. at 29-32.) The part was sitting by the bus when Daniels began the work. (ECF No. 28, Ex. A at 88.)

Once in the pit under the bus, Daniels attached the mounting plate to the replacement air spring. (*Id*. at 89.) He then matched the air spring mounting plate to the mounting plate on the spring beam of the bus and attached the bus air line to the air spring's air fitting. (*Id*. at 89, 94.) Next, Daniels secured the top part of the air spring mounting plate to the mounting plate on the body beam of the bus. He began experiencing difficulty when he attempted to insert the final studs to secure the two plates. (*Id.* at 92, 94.) In an attempt to elongate the air spring so the studs would descend down and through the holes in the spring beam mounting plate, Daniels introduced air into it using the shop compressor. (*Id*. at 92, 94-100.) As he did so, the air spring exploded, striking Daniels in the face and causing injuries to his mouth and jaw. (*Id*. at 100-01.)

The Maintenance Manual for the bus provides that the normal operating pressure is "110-130 psi." (ECF No. 30, Ex. 3 at Pg ID 273.) Daniels felt confident introducing air into the air spring using the shop compressor because it did not have pressure over 130 psi. (*Id*., Ex. 4 ¶ 6.) The Maintenance Manual did not provide instructions for inserting the studs into the bottom of the air spring through the holes in the spring beam. (*See* ECF No. 30, Ex. 3 at Pg ID 276.)

4

## II. Summary Judgment Standard

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). After adequate time for discovery and upon motion, Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant has an initial burden of showing "the absence of a genuine issue of material fact." *Id*. at 323. Once the movant meets this burden, the "nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.' " *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). To demonstrate a genuine issue, the nonmoving party must present sufficient evidence upon which a jury could reasonably find for that party; a "scintilla of evidence" is insufficient. *See Liberty Lobby*, 477 U.S. at 252.

5

"A party asserting that a fact cannot be or is genuinely disputed" must designate specifically the materials in the record supporting the assertion, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1). The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *See Liberty Lobby*, 477 U.S. at 255.

### III. Applicable Law and Analysis

Daniels describes his breach of implied warranty claim as "basically assert[ing] two theories of liability." (ECF No. 30 at Pg ID 245.) The first theory pertains to the air spring itself, which Daniels maintains "was not fit for its intended use to the extent that it was necessary to introduce air into the air spring in order to install it in buses." (*Id.*) In other words, Daniels claims that the air spring was defectively designed. Daniels claims that other manufacturer's air springs are malleable enough such that they can be elongated by hand in order to fit the studs. (*Id.*) Daniels also contends that the air spring was defectively designed in that it was not of sufficient strength and exploded when air was introduced. He claims that the use of cotter pins for the studs also rendered the air spring's design defective and that threaded studs are more easily secured. (*Id.*)

Defendants contend in their pending motion that Daniels fails to present sufficient evidence to prove a prima facie case of defective design.

Daniels second theory of liability relates to the Maintenance Manual for the bus. (*Id*. at Pg ID 248.) Daniels contends that this second theory is not premised on a failure to warn, but rather a failure to provide adequate instructions. (*Id*.) Specifically, Daniels asserts that the Maintenance Manual was inadequate and deceptive because: (1) it lacked instructions "as to how a mechanic is supposed to get the two studs on the bottom of the air spring through the holes in the spring beam"; (2) indicated that normal operating pressure for the bus was 100-130 psi and provided a specification for the subject air spring that exploded at less than 130 psi; and (3) instructed technicians to use the subject air spring "that was of insufficient strength to withstand the pressures to which it was subjected during installation/inflation[.]" (*Id*. at Pg ID 248-49.)

Defendants argue in their pending motion that they are entitled to summary judgment with respect this "failure to warn" claim because Daniels and his employer, DDOT, are sophisticated users. Daniels asserts in response that his claim is not based on a failure to warn, but a failure to provide adequate instruction, and that the sophisticated user defense is not applicable to such a claim. As Defendants indicate in their reply brief, however, " 'defects due to inadequate instructions or warnings' are woven from the very same thread." (ECF

No. 32 at Pg ID 298, quoting *Fleck v. Titan Tire Corp.*, 177 F. Supp. 2d 605, 613 (E.D. Mich. 2001) (citing Restatement (Third) of Torts: Products Liability § 2 (1998).))[2]  As Judge Lawson explained in *Fleck*: "Traditional principles of

---

[2] Section 2 of the Restatement (Third) of Torts- Products Liability describes three product defect categories:

> A product is defective when, at the time of sale or distribution, it contains a manufacturing defect, is defective in design, or is defective because of inadequate instructions or warnings. A product:
>
> (a) contains a manufacturing defect when the product departs from its intended design even though all possible care was exercised in the preparation and marketing of the product;
>
> (b) is defective in design when the foreseeable risks of harm posed by the product could have been reduced or avoided by the adoption of a reasonable alternative design by the seller or other distributor, or a predecessor in the commercial chain of distribution, and the omission of the alternative design renders the product not reasonably safe;
>
> (c) is defective because of inadequate instructions or warnings when the foreseeable risks of harm posed by the product could have been reduced or avoided by the provision of reasonable instructions or warnings by the seller or other distributor, or a predecessor in the commercial chain of distribution, and the omission of the instructions or warnings renders the product not reasonably safe.

Restatement (Third) of Torts- Products Liability § 2 (1998). *Comment i* to Section 2 makes it clear that claims asserting inadequate warnings or instructions are indistinct:

products liability law recognize three types of defects: manufacturing defects, defects due to faulty design, and defects due to inadequate instructions or warnings." *Id.*

### A.   Design Defect

Daniels' design defect claim-- whether premised on a negligence or breach of implied warranty theory-- requires proof of the same elements. *See Hollister v. Dayton Hudson Corp.*, 201 F.3d 731, 737 (6th Cir.2000) (holding that an implied warranty claim which is based on a product design defect requires a plaintiff to satisfy the exact same elements of proof as a negligence claim where the defendant is the seller and manufacturer). To prove a design defect under Michigan law, "the plaintiff must present evidence concerning the magnitude of the risks involved and the reasonableness of any proposed alternative design." *Reeves v. Cincinnati, Inc.*, 439 N.W.2d 326, 329 (Mich. Ct. App. 1989) (citing *Owens v. Allis-Chalmers Corp.*, 326 N.W.2d 372, 379 (1982)); *see also Paul v. Henri-Liné Mach. Tools, Inc.*, 557 F. App'x 535, 538 (6th Cir. 2014) (quotation marks omitted) (providing

---

> Commercial product sellers must provide reasonable instructions and warnings about risks of injury posed by products. Instructions inform persons how to use and consume products safely. Warnings alert users and consumers to the existence and nature of product risks so that they can prevent harm either by appropriate conduct during use or consumption or by choosing not to use or consume.

*Id.*)  As the comment then explains, the question as to whether liability attaches for either a failure to instruct or warn is identical: whether the defendant's instructions or warnings were adequate. *Id*.

that under Michigan law, "[the] plaintiff must show that the product was not reasonably safe for its foreseeable uses and that a risk-utility analysis favored a safer design.")  The plaintiff makes this showing by satisfying a "risk-utility" test. *See Paul*, 557 F. App'x at 539 (citing *Prentis v. Yale Mfg. Co.*, 365 N.W.2d 176, 185-86 (1984)).

Under this "risk-utility" test, the plaintiff must produce evidence demonstrating that:

(1) the severity of the injury was foreseeable by the manufacturer;

(2) the likelihood of occurrence of the injury was foreseeable by the manufacturer at the time of distribution of the product;

(3) there was a reasonable alternative design available;

(4) the alternative design was practicable;

(5) the alternative design would have reduced the foreseeable risk of harm posed by the product; and

(6) the omission of the alternative design rendered the product not reasonably safe.

*Peck v. Bridgeport Machines, Inc.*, 237 F.3d 614, 617-18 (6th Cir. 2001). Defendants maintain that Daniels lacks evidence to demonstrate the second prong of the risk-utility test.  To make this showing, a plaintiff must present some evidence of the probability of a similar accident happening.  *Paul v. Henri-Line Mach. Tools, Inc.*, 938 F. Supp. 2d 691, 698 (E.D. Mich. 2013), *aff'd* 557 F. App'x 535 (6th Cir. 2014).  As the Sixth Circuit stated in *Paul*: "The fact that a machine

10

is dangerous *per se* is an insufficient basis to demonstrate the likelihood of an injury." 557 F. App'x at 540 (citing *Gregory v. Cincinnati, Inc.*, No. 198382, 1999 WL 33453911 (Mich. Ct. App. Feb. 23, 1999) ("Evidence showing merely that there was a risk of harm is insufficient to meet the plaintiff's burden to show *what* the risk of harm was (e.g., how frequently such incidents occurred . . .).")

In *Paul*, the Sixth Circuit Court of Appeals affirmed the district court's grant of summary judgment with respect to the plaintiff's design-defect claim, finding that the plaintiff failed to satisfy the second prong of the risk-utility test. 557 F. App'x at 534-44. As set forth in the appellate court's decision, the district court held that the plaintiff did not meet her burden because she did not produce any statistical evidence demonstrating the likelihood of an injury, evidence of prior accidents "substantially similar" to the accident at issue, or testimony to "indicate that these machines were widely known to cause serious injuries." *Id*. at 540-41 (quoting *Paul*, 938 F. Supp. 2d at 699-700).

On appeal, the plaintiff in *Paul* had argued that the district court erred in considering evidence that there were no reports of other serious injuries or death involving the product at issue when assessing the second prong of the risk-utility test. 557 F. App'x at 540. Rejecting this argument, the court wrote:

> Plaintiff is correct that Michigan courts have long held that negative evidence, i.e., evidence regarding the absence of accidents, is inadmissible to show an absence of negligence. . . . Here, however, the absence of prior injury or death involving over-head-gantry

11

> milling machines was offered not to show the absence of negligence but to address the question of the likelihood of occurrence of injury resulting from use of [the defendant's] machine; this is proper evidence when performing the risk-utility balancing analysis in a design-defect product-liability claim.

*Id*. at 541 (citing *Przeradski v. Rexnord, Inc.*, 326 N.W.2d 541, 544 (Mich. Ct. App. 1982)). The plaintiff also contended that the district court erred by accepting the defendant's argument that counting the number of accidents is the only way to analyze the likelihood of injury. *Id*. The court of appeals found the argument without merit, indicating:

> Plaintiff is correct that in *Reeves v. Cincinnati, Inc.*, 176 Mich. App. 181, 439 N.W.2d 326, 329 (1989), the Michigan Court of Appeals held that a plaintiff's failure to present statistical evidence of accidents does not doom a prima facie case where there is testimony that the product is in general unsafe and that an alternative design would have prevented the plaintiff's accident. . . . But in *Reeves*, unlike the instant case, the plaintiffs' expert presented evidence that *power presses in general* were prone to the type of malfunction that caused the plaintiff's injury. 439 N.W.2d at 330.

*Id*. (emphasis in original).

In their summary judgment motion, Defendants present evidence to show that Nova has no record of any accidents similar to the one at issue, despite selling as many as 1,320 of the subject air springs to DDOT and 4,002 to customers since 2010. (ECF No. 28, Ex F at ¶¶ 5-6.) A witness from DDOT testified during his deposition in this case that DDOT is unaware of any other similar incidents occurring during the replacement of some 1,687 rear-suspension air springs on

12

similar Nova transit buses. (*Id.*, Ex. B at 35, 44.) Plaintiff's own expert witness, Robert Burnham, admitted that although performing research to determine if any other similar incidents existed, he found none. (*Id.*, Ex. E at 93-94, 97.) Burnham also indicated that he does not know the probability of a similar accident occurring and has not performed any statistical analysis concerning the air spring at issue or any other air spring. (*Id.* at 97.) In response, Daniels presents no evidence whatsoever regarding the likelihood of a similar accident.

Daniels asserts that Nova's Manager of Customer Service, John Dillon, testified at his deposition that he is aware of air springs exploding on a Nova Bus. (ECF No. 30 at Pg ID 246, citing Ex. 3 at 90.) The air springs Dillon described as exploding, however, were old air springs. (ECF No. 30, Ex. 3 at 90.) Dillon clearly stated that Daniels' accident was "the first time that I've heard of someone getting injured while replacing and having one explode during a replacement." (*Id.* at 91.) Daniels also points to Burnham's testimony stating that he is aware of explosions involving air springs according to National Highway Traffic Safety Administration reports. (ECF No. 30 at Pg ID 246, citing Ex. 5 at 93.) Burnham indicated, however, that he did not know the details of those explosions but recalled "they [the air springs] were actually in the installed position and there was a different kind of an operation going and not replacement of [the air springs]."

13

(ECF No. 30, Ex. 5 at 93.)  As indicated above, Burnham acknowledged that he was unaware of any air springs exploding during installation.  (*Id*. at 93-94, 97.)

As such, while Daniels presents evidence indicating that air springs are known to explode, he fails to offer any evidence to raise a genuine issue of material fact with respect to the "likelihood of occurrence of the type of accident precipitating the need for the safety device and the severity of injuries sustainable from such an accident."  *Reeves*, 439 N.W.2d at 329; *see also Lesho v. Textron, Inc.*, 408 F. Supp. 2d 329, 336 (E.D. Mich. 2005) (emphasizing that it is the foreseeability of "this type of accident"-- that being, the specific accident that led to the plaintiff's injuries-- that must be shown).  In other words, there is a "lack of evidence concerning the frequency of accidents *such as his*."  *Snider v. The Stanley Works*, No. 92-2161, 1994 WL 326005, at *3 (6th Cir. July 5, 1994) (citing *Petto v. Raymond Corp.*, 431 N.W.2d 44, 47 (Mich. Ct. App. 1988), appeal denied, 433 Mich. 879 (1989)) (emphasis added). For that reason, Daniels has not presented evidence akin to that offered in *Reeves*.  There, the plaintiff was injured when a power press unexpectedly cycled, crushing his right hand.  *Reeves*, 439 N.W.2d at 327.  The court found that the plaintiff presented testimony demonstrating a likelihood of accidents *resulting from power presses unexpectedly cycling*:

> In this case, the testimony provided by plaintiffs' expert witness can be summarized as follows: Unexpected spontaneous cycling of a power press, such as that resulting in this accident, occurs for unknown reasons in spite of good maintenance.  It is an inevitable

14

> consequence of the operation of presses, and it is well known that such cycling cases numerous serious injuries in workplaces. . .

*Id*. at 329-30. After setting forth long-standing literature documenting the availability of a guard that makes it impossible for the power press to cycle and thereby cause the accident at issue, the court wrote:

> This evidence is sufficient to raise a question of fact for the jury. Although plaintiffs do lack a statistical breakdown of the risks of injuries caused by presses with and without interlocking barrier guards or a cost-accounting analysis of the incremental added costs (in 1950) if the design had been altered to include the guard, there was considerable evidence of the reasonableness of the design-that power presses in general are unsafe because of unavoidable cycling, i.e., the magnitude of the risks, and that the alternative design, the installation of the guard, would have prevented plaintiffs' accident by precluding unexpected cycling of the press. In view of this evidence, we do not believe that statistical deficiencies in the expert testimony prevented plaintiffs from making a prima facie case.

*Id*. at 330. In comparison, Daniels has made no showing that the air spring installed on the Nova bus has a propensity to explode during installation.

Absent evidence of the probability of a similar accident, Daniels fails to demonstrate the second prong of the risk-utility test necessary to prove his design defect claim. As such, Defendants are entitled to summary judgment with respect to this claim.

### B. Inadequate Instructions Claim

As indicated, Daniels' claim based on inadequate instructions is indistinguishable from a claim based on inadequate warnings. "A manufacturer

15

has a duty to warn if it has actual or constructive knowledge of a danger, which is not obvious to users, and the manufacturer failed to use reasonable care in informing users of the danger or the facts tending to make the condition dangerous." *Croskey v. BMW of N. Am., Inc.*, 532 F.3d 511, 516 n.2 (6th Cir. 2008). Under Michigan law, however, "a manufacturer or seller is not liable in a product liability action for failure to provide an adequate warning if the product is provided for use by a sophisticated user." Mich. Comp. Laws § 600.2947(4). A "sophisticated user" is

> . . . a person or entity that, by virtue of training, experience, a profession, or legal obligations, is or is generally expected to be knowledgeable about a product's properties, including a potential hazard or adverse effect. An employee who does not have actual knowledge of the product's potential hazard or adverse effect that caused the injury is not a sophisticated user.

Mich. Comp. Laws § 600.2945(j). Michigan courts have construed the statute as providing that if an employer is a sophisticated user of the product, the manufacturer is relieved of any duty to warn the employer's workers (i.e. the ultimate users of the product) because the employer is in the best position to warn its employees of any danger associated with the product. *Mills v. Curioni, Inc.*, 238 F. Supp. 2d 876, 894 (E.D. Mich. 2002) (citing cases); *Walker v. Eagle Press & Equip. Co.*, 408 F. Supp. 2d 402, 408 (E.D. Mich. 2005). Judges in this district have interpreted Sections 600.2945 and .2947 as relieving a manufacturer of any duty to warn if the employer is a "sophisticated user," even where the employee

16

did not have actual knowledge of the products potential hazard or adverse effect that caused the employee's injury. *Mills*, 238 F. Supp. 2d at 895; *Irrer v. Milacron, Inc.*, 484 F. Supp. 2d 677, 680-81 (E.D. Mich. 2007).

Defendants present evidence in their summary judgment motion to establish that DDOT and Daniels were sophisticated users. (*See* ECF No. 28 at Pg ID 118-119.) Daniels fails to refute this contention in his response brief. Instead, Daniels simply argues that the sophisticated user defense is inapplicable because he is asserting a failure to instruct rather than failure to warn claim. Having rejected this distinction and lacking evidence to find a genuine issue of material fact with respect to whether DDOT was a sophisticated user of the bus and air springs, the Court holds that Defendants are entitled to summary judgment with respect to Daniels' failure to instruct claim.

### III. Conclusion

For the reasons set forth above, the Court finds that Daniels fails to present evidence to demonstrate the elements of his negligence and breach of implied warranty claims premised on a design defect. The Court further finds that those claims, to the extent premised on inadequate instructions, are barred by the sophisticated user defense.

Accordingly,

**IT IS ORDERED**, that Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 is **GRANTED**.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: February 4, 2015

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, February 4, 2015, by electronic and/or U.S. First Class mail.

s/ Richard Loury
Case Manager
